PARMELIA Z. HOFFNER *et al.* Plaintiffs in Error, *vs.* MIRA CUSTER, Defendant in Error.

*Opinion filed December 15, 1908.*

1. WILLS—*it is not always necessary to adopt literal meaning of words.* In construing a will it is not always necessary to adopt the literal and primary meaning of words, and it is proper to take into consideration, in determining their meaning, all the circumstances surrounding the testator, his purpose and motives in the disposition of his property, his relation to the beneficiaries of the will and the nature and situation of the property.

2. SAME—*when extrinsic evidence is admissible.* Where the testator devises land by the description "the north-east quarter of out-block five (5), situate in the city of Clinton," but there are

two conflicting plats of said out-lot 5, the later one being a re-survey of the original block, extrinsic evidence is admissible to show whether the description employed by the testator was used with reference to the old plat or the new one.

3. SAME—*what may be considered in determining testator's intention.* In determining whether the description of land devised was used with reference to an old plat or a new one, the facts may be considered that the testator believed and claimed that he owned three-fourths of the block, which would be true only according to the new plat, and that if the description referred to the old plat the gift would be of little value and would leave as intestate property two houses in the block, except a few feet off of one house, through which the dividing line would run.

4. SAME—*competency of the testator's declaration.* Where the question in construing a will is whether the words of description employed in a devise of land were used with reference to an old plat or a new one, evidence of declarations of the testator showing that he was in the habit of using the words of the description with reference to the new plat is competent; but such declarations, in so far as they indicate an intention to provide for the devisee, are incompetent, and will be presumed not to have been considered by the court where the result would be the same without them.

WRIT OF ERROR to the Circuit Court of DeWitt county; the Hon. SOLON PHILBRICK, Judge, presiding.

M. J. HINCHCLIFF, and E. B. MITCHELL, (LEMON & LEMON, of counsel,) for plaintiffs in error:

The law requires that all wills of lands shall be in writing, and extrinsic evidence is never admissible to alter, detract from or add to the terms of a will. *Kurtz* v. *Hibner,* 55 Ill. 514; *Heslop* v. *Gatton,* 71 id. 528; *Bishop* v. *Morgan,* 82 id. 351; *Bradley* v. *Rees,* 113 id. 327; *Bingel* v. *Volz,* 142 id. 214; *Williams* v. *Williams,* 189 id. 500; *Engelthaler* v. *Engelthaler,* 196 id. 230; *Vestal* v. *Garrett,* 197 id. 398; *Goode* v. *Goode,* 22 Mo. 518; *Sherwood* v. *Sherwood,* 45 Wis. 357.

Parol evidence is admissible to explain or to remove a latent ambiguity in a written will. But such ambiguity must appear upon the face of the paper. If no ambiguity,

appears such evidence will not be admitted. *Eatherly* v. *Eatherly,* 78 Am. Dec. 499.

The intention to be sought for in the construction of a will is not that which existed in the mind of the testator but that which is expressed in the language of the will. *Engelthaler* v. *Engelthaler,* 196 Ill. 230.

In construing a will, evidence of the intention of the testator is to be sought from the words of the will, and not *aliunde. Theall* v. *Theall,* 7 La. 226.

The intention of the testator must be gathered from the language of the will and not from extrinsic evidence. *Asay* v. *Hoover,* 45 Am. Dec. 713.

When a will fully describes a person or thing, whether by many or few particulars, it cannot be competent to receive evidence that another person or thing was meant, though nothing be found to answer the description of the will. *Barnes* v. *Simms,* 49 Am. Dec. 435.

While parol evidence is receivable to explain the terms of a description and to identify what property may come under it, evidence is not receivable either for the purpose of broadening or narrowing a description under the guise of explaining it. 2 Underhill on Wills, sec. 911.

The intent of a testator can only be ascertained from extrinsic circumstances when there is a latent ambiguity, but extrinsic evidence is not admissible to alter, detract from or add to the terms of the will itself. *Myers* v. *Eddy,* 47 Barb. 263.

Extrinsic evidence is not admissible to identify property defectively described in a will. *Bible Society* v. *Pratt,* 91 Mass. 109.

A bill in equity will not lie to correct a mistake in the description of land devised in a will by the substitution of another tract in the place of the one described, nor can this be done directly under pretense of construing the will. *Bingel* v. *Volz,* 142 Ill. 214; *Goode* v. *Goode,* 22 Mo. 518; *Avery* v. *Chappel,* 6 Conn. 270.

P. R. BARNES, and HERRICK & HERRICK, for defendant in error:

The paramount rule in the construction of wills is to ascertain the intention of the testator and to give it effect, if not contrary to some positive rule of law. This intent is not to be arrived at by construing portions of the will, nor is such intent to be gathered from a single sentence or clause. The entire will is to be considered and all its provisions compared and given due weight, in order to arrive at the general plan and intention of the testator. *Cary v. Slead,* 220 Ill. 508; *Kincaid v. Moore,* 233 id. 584; *Morrison v. Schorr,* 197 id. 554; *Eldred v. Meek,* 183 id. 26; *Lomax v. Shinn,* 162 id. 124; *Phayer v. Kennedy,* 169 id. 360; *Fisher v. Fairbanks,* 180 id. 187; *Greenwood v. Greenwood,* 178 id. 387; *Vanatta v. Carr,* 223 id. 160.

Where the ambiguity consists of a misdescription, if the misdescription can be stricken out and enough remain in the will to identify the person or thing the court will deal with it in that way, or if it is an obvious mistake the court will read it as corrected. *Decker v. Decker,* 121 Ill. 340.

For the purpose of determining the subject and the disposition by will or the quantity of land intended to be given, the court may inquire into every material fact relating to the property which is claimed by the subject of the disposition, to enable it to identify the thing intended to be devised by the testator or the quantity or interest he has given by his will. *Smith v. Dennison,* 112 Ill. 367.

The adoption of a description by the testator, in his lifetime, may be shown to identify what was intended by the devise. *Smith v. Dennison,* 112 Ill. 367; 2 Story's Eq. Jur. sec. 1074; 1 Redfield on Wills, 436; *Doran v. Mullen,* 78 Ill. 342; *Kennedy v. Kennedy,* 105 id. 350.

It will be presumed, in the case of a will, that the testator intended to dispose of his entire estate, and to devise real estate of which he is the owner or in which he has some interest. If it appears *dehors* the will that he had no

interest in the property devised, such fact, in itself, raises a latent ambiguity in the will, which can only be explained by testimony showing his intent with reference to the subject of the devise. Redfield on Wills, 442; *Higgins* v. *Dwen,* 100 Ill. 554; *Felkel* v. *O'Brien,* 231 id. 329; *Boehm* v. *Baldwin,* 221 id. 59; *Decker* v. *Decker,* 121 id. 341; *Patch* v. *White,* 117 U. S. 210.

Mr. JUSTICE DUNN delivered the opinion of the court:

James C. Rucker died in 1900, being eighty-three years old, leaving a will, whereby he devised to Mira Custer the north-east quarter of out-block 5, in the city of Clinton. His heirs, who were his nephews and nieces, filed a bill for the partition of other real estate, and included therein a part of said out-block 5, described as follows: Commencing 71.28 feet east of the north-west corner of said out-block 5; thence east 66 feet; thence south 140.25 feet; thence west 66 feet to the south-east corner of the John A. Phares tract; thence north 140.25 feet to place of beginning,—of which premises it was alleged Mira Custer was in possession by virtue of some pretended right under the will of James C. Rucker. Mira Custer answered, claiming the premises last described by virtue of the will, and filed a cross-bill asking the court to construe the will in the light of the surrounding circumstances at the time it was made and decree that the will devised said premises to her. The decree was in favor of the complainant in the cross-bill, and a writ of error has been sued out to reverse this decree.

The original town of Clinton was surveyed in 1835, and on the plat then made, out-block 5 was shown as a lot 264 feet square. Some years later a part of the east half of the out-block was occupied by the Illinois Central Railroad Company for its right of way. In 1869 a re-survey and new plat of the town were made, showing the railroad occupying a strip off the east side of the plat. East street is the most easterly street shown on these plats, and the fol-

lowing is a representation of the portions of the respective plats east of East street:

ORIGINAL.          RE-SURVEY.

The railroad right of way was 100 feet wide and ran almost north and south through the block, leaving a strip from 16 to 18 feet wide of the east half of the block on the west side of the right of way and a strip from 21 to 24 feet wide east of the right of way. The latter strip was not fenced but was used for a driveway. The testator acquired title to that portion of the premises in controversy on May 11, 1881, by a deed from James Walker, in which the premises were described as follows: Commencing at a point 137.28 feet east of the north-west corner of out-block No. 5, in Clinton; running thence south 198 feet to a lot owned by C. H. Moore; thence west along the north line of said Moore lot 137.28 feet to East street; thence north along the east side of East street 57¾ feet; thence east 71.28 feet; thence north 140¼ feet to Main street; thence east 66 feet to the place of beginning; also all that part of the east half of out-block 5, in Clinton, which lies west of the right of way of the Illinois Central Railroad Company, and supposed to be a strip 16 feet wide east and west and 232 feet long north and south on the west side of said east half, said tracts being situated in the city of Clinton, De-Witt county, Illinois.

The testator owned, in his lifetime, all of that part of original out-block 5 west of the railroad, except a tract in the north-west corner 140.25 feet long north and south and 71.28 feet wide east and west. Two houses were built on the north part of the premises, facing Main street, which ran north of the lot, and two on the south part of the premises, facing East street, which ran west of the lot. The east house on the north part of the lot is so situated that the dividing line between the east and west halves of the block as originally platted runs through it two or three feet west of the east side of the house. If the will devises the north-east quarter of the original out-block, Mira Custer will take only a strip of land 16 feet wide in the north half of the block adjoining the right of way of the railroad and

including about three feet of the east side of the east house. She claims that lot 5 in the will, in the light of the circumstances surrounding its execution, means that part of the lot west of the railroad, and that the devise to her was of all the testator's interest in the north half of that part of the lot.

Mira Custer was not related to the testator, but she was taken into his family in 1855, at the age of seven or eight years, and remained there until her marriage, in 1869. Mira was regarded and treated as a member of the family, and was a dutiful, faithful daughter, rendering all the services that would be expected of one in that natural relation. A feeling of tender affection existed between her and the testator. After her marriage a constant association continued between her and her husband and the testator. Frequent visits were made and the affectionate nature of their relation continued. In 1894 she returned to his home in Clinton with her husband and remained with the testator, caring for him until the necessity of taking her husband, who had been paralyzed, to California required her to leave Mr. Rucker.

The object of construction of a will is to ascertain the intention of the testator. The intention to be sought is not that which may be supposed to have been in the mind of the testator, but that which he has expressed in the words of his will. But it is not always necessary to adopt the literal or primary meaning of the words. It is proper to take into consideration all the circumstances surrounding the testator, his purpose and motives in the disposition of his property, his relation to the benficiaries of the instrument, the nature and situation of the property, and in the light of all these circumstances determine the meaning of the words employed. The presumption of the law is that a testator intends to dispose of all his property. It was the manifest intention of the testator to make a beneficial provision for Mira Custer. If the words of the will refer to

the north-east quarter of the original out-block 5 he has done neither. The 16-foot strip is of comparatively slight value, and the testator has failed to dispose of his two dwelling houses in the north half of the block. The plat of the re-survey shows block 5 bounded on the east by the railroad. There is nothing in that plat to indicate that the north and south lines of the lot cross the railroad. A deed which described the west half of out-block 5 as shown on the plat of the re-survey of the town of Clinton, of record in book 2 of the record of deeds, on page 310, would convey only the west half of the enclosed tract marked "5" on that plat, all of which is west of the railroad. A deed which described the west half of out-block 5 as shown on the original plat of the town of Clinton would convey the west half of the original out-block, including the part now east of the railroad. The description used by the testator is, "the north-east quarter of out-block five (5), situate in the city of Clinton." To which plat does this description refer? Here is a description apparently clear and unambiguous, but the collateral matter of the two plats shown by extrinsic evidence makes the meaning uncertain. Extrinsic evidence is therefore admissible to show which lot was intended. (*Slosson* v. *Hall*, 17 Minn. 95.) The evidence leaves no doubt on the subject. The testator owned only a small strip, of comparatively trifling value, in the north-east quarter, according to the old plat. He understood that he owned three-fourths of out-block 5, which was true only according to the new plat. He frequently spoke of his owning three-fourths of the block, and said if he could get hold of the north-west quarter he would own the entire block. He devised the south half of out-block 5, which he owned according to the new plat but not according to the old. He supposed he had devised all his property in out-block 5, for he placed no residuary clause in his will. But this supposition was true only according to the new plat. The county atlas contained a map of the city showing out-block 5 en-

tirely west of the railroad, and the municipal authorities levied a special assessment on the property as the east 78.72 feet of out-block 5. Whether he had any knowledge of either or both of the plats, it is manifest that the description used described the property which he owned in out-block 5 according to the new plat, and that it was that property which he intended to devise.

It is insisted that the court erroneously admitted evidence of the declarations of the testator. So far as such declarations indicated an intention to provide for Mira Custer they were incompetent and it is presumed were not considered by the court. Without them the result would be the same. So far as his statements show that he was in the habit of using the words "block 5" as referring to the tract of land west of the railroad and not to the original block, they were competent.

Mrs. Custer and O. W. Haynie testified, and it is objected that they were incompetent. Haynie was a nephew and heir of the testator. His interest was adverse to Mrs. Custer, who called him, and he was therefore competent. Whether Mrs. Custer was competent generally, or not, there is ample evidence to sustain the decree disregarding her testimony.

There is one particular, however, in which the decree is wrong. It gives to Mira Custer more land than the will devises to her. Doubtless the testator supposed the description "the north-east quarter" to include all the land he owned in the north half of the block. But it does not do so, and the court has no power to correct the description. The north line of the tract west of the railroad is 152.76 feet. The decree gives to Mrs. Custer all of the north half of the tract except the west 71.8 feet, thus giving her 4.58 feet more than she is entitled to.

The decree will therefore be reversed and the cause remanded to the circuit court of DeWitt county, with directions to enter a decree finding Mira Custer to be the owner

in fee simple of the following described premises, viz.: Commencing 76.38 feet east of the north-west corner of out-block 5, in the city of Clinton; running thence east to the west line of the right of way of the Illinois Central Railroad Company; thence south along the west line of said right of way to the center line of said out-block 5; thence west along the center line of said out-block 5 to a point midway between the west line of said right of way and the west line of said out-block 5; thence north to the place of beginning; and directing partition to be made of the remainder of the premises in out-block 5 owned by James C. Rucker at the time of his death among the same parties and in the same proportions as directed in the original decree, and for further proceedings not inconsistent with this opinion. Each party will pay one-half the costs of this court.

*Reversed and remanded, with directions.*